IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver for the BANK OF ALAMO, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | No. 04-1028-T/An |
| PEGGY S. HOOPER, | ) ) | |
| Defendant. | ) ) | |

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC") as Receiver for the Bank of Alamo, filed this action against defendant Peggy S. Hooper to recover the deficiency remaining following her default on a promissory note and the subsequent foreclosure sale. In addition, the FDIC seeks interest, costs and reasonable attorney fees incurred in collecting the debt. Before the Court is the FDIC's motion for summary judgment. The defendant responded to the motion, and the FDIC filed a reply to that response.

Motions for summary judgment are governed by Fed. R. Civ. P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56(c). The moving party may support the

motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 323.

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. Id. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

The undisputed evidence in the record establishes that Hooper executed a promissory note with the Bank of Alamo ("Bank") on May 9, 2001 in the amount of $1,600,000. The

2

purpose of the loan was to fund the purchase of commercial real estate and construction of a commercial building project. The note, on its face, states that Hooper agreed to pay the Bank the full amount of the loan, plus interest, on or before February 9, 2002. (Compl., Ex. A.) The note was secured by a deed of trust in favor of the Bank, giving the Bank the right to foreclose in the event of default. (Compl., Ex. B.) Hooper did not pay the full amount due on the note by February 9, 2002. The FDIC, which was named as Receiver for the Bank upon its closure by the Commissioner of the Tennessee Department of Banking and Consumer Finance, considered the note in default and foreclosed on the deed of trust. The property was advertised for public sale, at which the FDIC bought the property for the sum of $346,000, leaving a deficiency between the sale price and the outstanding balance on the principal amount of the note of $1,254,000.

Hooper contends that the FDIC is not entitled to collect the amount of the deficiency because the note was only one part of a larger overall oral purchase/construction loan agreement between herself and the Bank. Specifically, Hooper contends that under the oral agreement the Bank was to: (1) make a direct loan to her in the amount of $1,600,000; (2) obtain at least $400,000 in participation loans from other banks; (3) forego any repayment until the entire project was completed; and (4) finance the completed project with a ten to fifteen-year permanent loan. Hooper contends that the Bank was guilty of fraud, fraudulent inducement, intentional or negligent misrepresentation, breach of the overall contract, promissory estoppel and failure of a condition precedent. She maintains that the

3

Bank's failure to perform as promised under the oral agreement caused the entire project to fail and that, consequently, she was not in default on the note.

The FDIC argues that Hooper may not present parol evidence of the alleged oral agreement in this case because it would alter the unambiguous terms of the written loan agreement. The FDIC further argues that the alleged oral agreement is barred by the statute of frauds. Hooper vigorously argues that the FDIC is mistaken regarding the application of both the parol evidence rule and the statute of frauds. However, the Court finds that it is unnecessary to address these issues, as Hooper's defenses are entirely barred by the federal estoppel doctrine established by the Supreme Court's decision in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942) and codified at 12 U.S.C. § 1823(e).

"The common law D'Oench doctrine prevents [parties] from asserting as either a claim or defense against the FDIC oral agreements or arrangements. Its statutory codification, section 1823(e), bars anyone from asserting against the FDIC any agreement that is not in writing and is not properly recorded in the records of the bank." FDIC v. LeBlanc, 85 F.3d 815, 821 (1st Cir. 1996) (citations and internal quotation omitted). The purpose of both the D'Oench doctrine and § 1823(e) is to protect the federal banking regulatory authority from unrecorded agreements that might prevent the fulfillment of its duties. The statute specifically provides:

> (e) Agreements against interests of Corporation
> (1) In general
> No agreement which tends to diminish or defeat the interest of
> the Corporation in any asset acquired by it under this section or

4

> section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

> The scope of agreements precluded by D'Oench and section 1823(e) is expansive. It includes promises to perform, as well as fraudulent misrepresentations or warranties, whether the FDIC had knowledge of the fraud or misrepresentation at the time it acquired the asset or not. Additionally, it embraces both affirmative claims and defenses and extends to arguments asserted in terms of contract or tort.

LeBlanc, 85 F.3d at 821 (citations omitted). See also Langley v. FDIC, 484 U.S. 86 (1987) (holding § 1823(e) precludes defense of fraud in the inducement from being asserted against the FDIC).

The FDIC asserts that the D'Oench doctrine and § 1823(e) apply in this case because Hooper's allegations of an oral agreement modifying the terms of the written loan documents is an attempt to diminish or defeat the FDIC's interest in the deficiency. Hooper admits that the alleged oral agreement was never reduced to written form and executed by herself and the Bank's officers. She does attempt to argue that the agreement is reflected in the Bank's records.

5

Hooper does not refer to any official Bank record of the alleged oral agreement, but points only to correspondence from certain Bank officers referring to the "commercial building," the "E.W. James Project" and a "construction loan." However, the FDIC has never disputed that the purpose of the $1,600,000 loan was to finance the construction of a commercial building project. The correspondence to which Hooper refers contains no references to any agreement to obtain an additional $400,000 in participation loans and no references to any agreement to forego payment of the loan until the completion of the project. There simply is no evidence that the alleged oral agreement was ever properly recorded in the Bank's official records.

Hooper also argues that this action falls under an exception to § 1823(e) that was addressed in Riverside Park Realty Co. v. FDIC, 465 F. Supp. 305 (M.D. Tenn. 1978). The court in that case held that § 1823(e) did not apply when "the asset upon which the FDIC is attempting to recover is *the very same agreement* that the makers allege has been breached by the FDIC's assignors." Id. at 313. She argues that that is the case here, as well.

Hooper has misapplied the holding in Riverside Park. The reason for the holding in that case was that the agreement in question simply was not a separate, unrecorded agreement to which the statute applied:

> None of the policies that favor the invocation of this statute are present in such cases because the terms of the agreement that tend to diminish the rights of the FDIC appear in writing on the face of the agreement that the FDIC seeks to enforce.
> Defendants' attempt to characterize the agreement that plaintiffs claim has been breached as a separate and unrecorded agreement is totally

6

>unpersuasive. The deed of trust under which the FDIC now seeks to foreclose incorporates by reference "as if fully set forth" the terms of the loan agreement that plaintiffs allege were breached. Furthermore, the deed of trust note, which in essence is what the FDIC seeks to enforce through foreclosure, contains these very terms. Therefore, since plaintiffs are not asserting a separate agreement to defeat the rights of the FDIC, defendants' argument that § 1823(e) applies must fail.

Id. (emphasis added).

Neither the promissory note nor the deed of trust in this case contain any of the terms of the oral agreement that Hooper maintains that she had with the Bank. Hooper has admitted that the agreement was not reduced to writing and executed, and there is no evidence that the agreement was ever properly recorded in the Bank's official records. Under these circumstances, § 1823(e) applies to preclude all of the defenses asserted by Hooper that are based on the alleged existence of a larger oral agreement.

Hooper contends that the application of § 1823(e) in this case would constitute an unconstitutional taking of her property without due process of law, in violation of the Fifth Amendment. This argument has been addressed by other courts, and rejected. See, e.g., Resolution Trust Corp. v. Daddona, 9 F.3d 312, 320-21 (3d Cir. 1993); Fed. Sav. & Loan Ins. Corp. v. Griffin, 935 F.2d 691, 699 (5th Cir. 1991). This Court agrees that the application of § 1823(e) does not constitute an unconstitutional taking in this case.

Lastly, Hooper challenges the manner in which the foreclosure sale was conducted. The deed of trust executed by Hooper provided that in the event of default, the trustee was authorized to advertise the premises for public sale in accordance with state law, and to sell

7

the property at the courthouse door to the highest bidder. Thus, the foreclosure sale was governed by Tenn. Code Ann. § 35-5-101 *et seq.* Hooper does not dispute that the sale was legally advertised, held and conducted in compliance with those statutory provisions. Rather, she argues that the sale was commercially unreasonable because it occurred so quickly that no potential bidder other than the FDIC had the opportunity to bid.

"If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale." Holt v. Citizens Cent. Bank, 688 S.W.2d 414 (Tenn. 1985); see also Orlando Residence, Ltd. v. Nashville Lodging Co., 104 S.W.3d 848, 855 (Tenn. Ct. App. 2002). This is a substantial burden, as courts are not inclined to set aside foreclosures lightly. Young v. Bank One, N.A., 2004 WL 2098284, *1 (Tenn. Ct. App. Sept. 20, 2004). Furthermore, the rule of Holt applies even if the debtor seeks only to avoid the deficiency, not set aside the sale itself. McDill Columbus Corp. v. The Lakes Corp., 1992 WL 115576, *2 (Tenn. Ct. App. June 1, 1992).

When the FDIC was named Receiver of the Bank of Alamo, Douglas Alrutz was appointed Substitute Trustee under the deed of trust, in place of the original Trustee, Claude M. Conley. Alrutz has submitted his affidavit, in which he states that on the day of the foreclosure sale he first announced that the sale would proceed and then read the notice of the sale that had been published in the newspaper. He then states:

8

> I called out 'Are there any bidders?' At which time, the FDIC bid on the property in the amount of $346,000.00. After hearing this bid, I called out "Are there any other bidders?' I then paused to give potential bidders a chance to bid; however, no one else bid. Next, I called out 'Going once.' Again, I paused to give potential bidders a chance to bid. However, again, no one else bid. I then called out 'Going twice.' For a third time, I paused to give potential bidders a chance to bid. Again, no one else bid. Finally, I called out 'Sold.'

(Alrutz Aff. ¶ 8.) Alrutz further states that, immediately following the sale, he remained at the corner of the courthouse for a few minutes. During that time, no one approached him and indicated they had been interested in bidding on the property, or that they had wanted to bid but were unable to do so. Id. ¶10.

Hooper testified in her deposition that she was present at the foreclosure sale, and that there were approximately 20-30 other people in attendance. She testified that immediately after the person representing the FDIC made the bid of $346,000, Alrutz said "sold" without allowing anyone else an opportunity to bid. (Hooper 9/1/04 Dep., at 51.) An affidavit from an individual by the name of Becky Morris supports Hooper's version of the sale.

Hooper further asserted in her deposition that there were other people at the sale who were interested in the property. Assuming, *arguendo*, that her description of the foreclosure sale is accurate, Hooper could not name anyone who would testify that they had intended to bid on the property but were prevented from doing so. Id. at 52-56. Likewise, Becky Morris did not identify any specific person who would testify that they intended to bid but were unable to do so.

9

Hooper has offered no evidence that any person who intended to bid on the property was unable to do so because of the speed with which the foreclosure sale was conducted. Therefore, she has failed to show that there are disputed factual issues regarding whether the sale was commercially reasonable.

In conclusion, the Court finds that the FDIC is entitled to judgment as a matter of law on the grounds that Hooper's defenses based on the alleged oral agreement are barred by 12 U.S.C. § 1823(e), and that she has failed to show that the foreclosure sale was commercially unreasonable. Therefore, the motion for summary judgment is GRANTED, and judgment will be entered in favor of the FDIC in the amount of the deficiency.

In addition to the principal amount of the deficiency, the FDIC seeks interest plus the costs and attorney fees incurred in collecting the debt, as provided for in the note. The FDIC is hereby allowed twenty days after this order is entered on the docket in which to provide evidence regarding the amount of interest, costs and attorney fees sought. Hooper will then have twenty days in which to respond.

IT IS SO ORDERED.

_/s/ James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_12 September 2005_
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 53 in case 1:04-CV-01028 was distributed by fax, mail, or direct printing on September 14, 2005 to the parties listed.

---

J. Houston Gordon
LAW OFFICES OF J. HOUSTON GORDON
114 W. Liberty Ave.
Ste. 300
Covington, TN 38019--084

Robert E. Craddock
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Honorable James Todd
US DISTRICT COURT